IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| OLIVER HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17cv148-HEH |
| | ) | |
| CONTRACT CALLERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
**(Dismissing Case for Lack of Subject-Matter Jurisdiction)**

THIS MATTER is before the Court on its own initiative. On February 20, 2017, Plaintiff Oliver Holmes ("Plaintiff") filed his Complaint alleging that Defendant Contract Callers, Inc. ("Defendant") violated 15 U.S.C. § 1692, *et seq.*, commonly known as the Fair Debt Collections Practices Act ("FDCPA"). (ECF No. 1.)

On March 17, 2017, Defendant filed an Answer to the Complaint. (ECF No. 3.) As an affirmative defense, Defendant asserted that Plaintiff lacks standing to bring this action. (*Id.* at 3.) Because this called into question subject-matter jurisdiction, the Court ordered the parties to submit memoranda addressing Plaintiff's standing. (ECF No. 6.)

Pursuant to the Court's Order, Defendant filed a memorandum on May 15, 2017, arguing that this Court lacks subject-matter jurisdiction because Plaintiff has suffered no injury and thus has no standing. (ECF No. 13.) In Plaintiff's response, filed on May 28, 2017, he argues that there are "sufficient facts to prove particularized and concrete injuries to satisfy Article III standing." (ECF No. 14, at 2.)

The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not materially aid in the decisional process. E.D. Va. Local Civ. R. 7(J).

For the reasons stated herein, the Court finds that it lacks subject-matter jurisdiction and therefore will dismiss Plaintiff's Complaint without prejudice.

## I. BACKGROUND

Plaintiff begins his one-count Complaint by asserting that "[o]n information and belief, on a date better known to Defendant, Defendant began collection activities on an alleged consumer debt from the Plaintiff." (Compl. ¶ 7.) The Complaint notes that this alleged debt was incurred as a financial obligation that was primarily for personal, family or household purposes, and that "10 Dominion Resources, Inc." was the original creditor. (*Id.* ¶ 8.) Though it is unclear when, at some point Defendant reported the debt on Plaintiff's credit report. (*Id.* ¶ 10.)

Plaintiff sent a letter to Defendant on September 15, 2016, disputing the debt. (*Id.* ¶ 11.) Approximately two and a half months later, on November 28, 2016, Plaintiff examined his credit report and found that Defendant had re-reported the debt, but had not listed it as being "disputed by consumer." (*Id.* ¶ 12.) As a result, Plaintiff summarily alleges that he "has been damaged" and that he "is entitled to damages in accordance with the FDCPA." (*Id.* ¶¶ 13, 16.)

However, at no point in his Complaint does Plaintiff specify *how* he has allegedly been damaged.[1]

## II. LEGAL STANDARD

Structurally, our Constitution divides the Federal Government into three discrete branches, each with specifically defined powers. As such, it is well settled that judicial power is limited to the extent that federal courts may exercise jurisdiction only over "cases" and "controversies." U.S. Const, art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Thus, subject-matter jurisdiction requires a justiciable case or controversy within the meaning of Article III of the United States Constitution. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Standing constitutes one component of justiciability. *Lujan*, 504 U.S. at 560. Whether a plaintiff has standing presents a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on

---

[1] In his brief on standing, Plaintiff attempts to bolster his Complaint by stating that he "has received a lower credit score impact due to the failure of the Defendant to properly update his report," that the lower credit score "gives a false and negative picture of his credit to anyone that would pull his credit during this time period," and that "[c]urrent issuers of credit to [Plaintiff], constantly peak at his credit to determine if they should continue to extend the credit lines that he currently has." (Pl.'s Resp. Def.'s Mem. on Standing 3–4, ECF No. 14.) He goes on to note "that the lower credit score impacts [Plaintiff] in multiple facets including denial of credit and increased cost of insurance policies and applicable interest rates on credit cards and loans he might own." (*Id.* at 4.) Because the Court's analysis is confined to the facts as pleaded in the Complaint, it cannot consider these possible credit-related injuries that Plaintiff raises for the first time in his brief.

its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (internal citation omitted).

The Supreme Court has established that the "irreducible constitutional minimum" of standing includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61 (citations and quotation marks omitted). Because Plaintiff seeks to invoke this Court's jurisdiction, he bears the burden of establishing all three elements. *Id.* at 561. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Warth*, 422 U.S. at 518).

In *Spokeo*, the Supreme Court reiterated the basic tenets of the standing doctrine. *Id.* at 1547. It noted that to satisfy the injury-in-fact requirement, a plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

To satisfy the particularization requirement, the plaintiff "must allege a distinct and palpable injury to himself." *Warth*, 422 U.S. at 501 (citations omitted). The injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Claims asserting "'generalized grievance[s]' shared in substantially equal measure by all

or a large class of citizens . . . normally do[ ] not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499 (citations omitted).

Standing's concreteness requirement demands that an injury be real, not abstract. *Spokeo*, 136 S. Ct. at 1548. However, it is possible for an intangible harm to be concrete.[2] *Id.* at 1549. When determining whether such intangible harms are sufficiently concrete to satisfy Article III's requirements, Congress' "judgment is . . . instructive and important." *Id.*

In creating statutory rights of action, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S at 578) (alteration in original). However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The Supreme Court has made clear that "Article III standing requires a concrete injury *even in the context of a statutory violation.*" *Id.* (emphasis added).

When a plaintiff alleges a statutory violation, he usually must plead an additional injury in order to satisfy the concreteness requirement. Concreteness can certainly be satisfied by alleging a harm—either tangible or intangible—which has already occurred

---

[2] Examples of these intangible injuries include libel, slander, and violations of the constitutional rights to free speech and free exercise. *See Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); Restatement (First) of Torts §§ 569, 570).

5

or is continuing to occur. But concreteness can also be satisfied where the plaintiff faces a "risk of real harm" likely to occur in the future. *Id.*

The Supreme Court has noted that in some circumstances, however, merely pleading "the violation of a procedural right granted by statute" may be sufficient to satisfy concreteness. *Id.* This occurs in situations where the legislature has codified causes of action with intangible harms where recovery was long permitted at common law. *Id.* (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se*) (1938); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) (access to public information); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (access to public information)). "[A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

However, absent this narrow exception where Congress has codified a common law intangible injury, standing only exists for a statutory violation where the plaintiff has also alleged an additional concrete harm. For example, the Supreme Court noted in *Spokeo* that a consumer reporting agency may fail to provide the statutorily required notice to the user of consumer information, even if that information is entirely accurate. *Id.* at 1550. Or, the agency might provide some wholly inaccurate, yet benign, information, such as an incorrect zip code. *Id.* While both of these situations constitute statutory violations, the "victim" has no standing because the conduct does not "cause harm or present any material risk of harm." *Id.*

## III. ANALYSIS

The entirety of Plaintiff's Complaint amounts to an allegation that Defendant violated various provisions of the FDCPA by failing to list his account as "disputed by consumer" when it reported the debt on his credit report in November 2016. (*See generally* Compl.) However, conspicuously absent is any allegation that Plaintiff suffered any actual harm from these violations. Consequently, he has failed to plead that he suffered a sufficiently "concrete and particularized" harm that is "actual and imminent, not conjectural or hypothetical" to confer Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Without such an allegation, the next step in the Court's inquiry is to determine whether Plaintiff has sufficiently pleaded that he faces a "risk of real harm" that is likely to occur in the future. *Spokeo*, 136 S.Ct. at 1549. Despite the fact that he made no allegation to this effect in his Complaint, Plaintiff has attempted to bolster his position in this regard.

Plaintiff contends that "the failure to communicate that a disputed debt is disputed . . . presents a risk of harm to the consumer sufficient to create Article III standing . . . ." (Pl.'s Resp. Def.'s Mem. on Standing 11.) To support this proposition, Plaintiff cites one published case and one unpublished case from the Northern District of Illinois—both of which are currently on appeal to the Seventh Circuit—and one unpublished case from the District of Maryland. (*Id.* at 7–9 (citing *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F.Supp.3d 745 (N.D. Ill. 2016); *Evans v. Portfolio Recovery Assocs.*, No. 15C–4498,

2016 WL 6833930 (N.D. Ill. Nov. 20, 2016); *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, No. PX-16-1053, 2016 WL 6803775 (D. Md. Nov. 17, 2016)).) While these cases are informative, they are not binding on this Court, especially in light of the Fourth Circuit's recent decision in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017).

In *Beck*, the court consolidated two cases involving data breaches at the Dorn Veterans Affairs Medical Center ("Dorn VAMC") in Columbia, South Carolina. *Id.* at 267–68. The plaintiffs alleged that both data breaches constituted violations of the Privacy Act. *Id.* at 266–68. However, they did not "allege that Dorn VAMC's violations of the Privacy Act alone constitute[d] an Article III injury-in-fact." *Id.* at 271 n.4. Rather, the plaintiffs asserted that they suffered a concrete injury from the future risk of identity theft. *Id.* at 266–67.

The Fourth Circuit found that the plaintiffs' speculative allegations were "insufficient to establish a 'substantial risk' of harm" necessary to show concrete injury. *Id.* at 275. Consequently, it held that plaintiffs' abstract claim of harm was inadequate to confer standing. *Id.* at 276–67.

In this case, the Court concludes that Plaintiff has attempted to make similarly speculative claims and has pleaded no facts in his Complaint to support any reasonable inference that he faces an impending risk of actual harm. Thus, the Court finds that Plaintiff cannot claim standing on this ground, either.

Therefore, the final step in the Court's inquiry is to determine whether the statutory provisions Plaintiff alleges to have been violated are the type where Congress

has codified causes of action with intangible harms where recovery was long permitted at common law. See *Spokeo*, 136 S. Ct. at 1549.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Therefore, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Plaintiff does not suggest "a common law analogue" for his alleged FDCPA injury, and there seems to be "no traditional right of action in common law that is comparable." *Dreher v. Experian Info. Sol., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017).

The Fourth Circuit's recent decision in *Dreher* does not alter this Court's analysis. In *Dreher*, the plaintiff was associated with a delinquent credit card account listed on his credit report under the name of "Advanta." *Id.* at 340. Unbeknownst to the plaintiff, another entity, CardWorks, had acquired Advanta and decided to continue servicing Advanta's accounts using Advanta's name. *Id.* at 341. As a result of CardWorks' failure to use its own name when reporting the Advanta accounts, the plaintiff alleged that "he suffered a cognizable 'informational injury' because he was denied 'specific information' to which [he was] entitled under the FCRA." *Id.* at 345.

After determining that there was no common law analogue to Dreher's alleged FCRA violation, the Fourth Circuit suggested that he may have nonetheless suffered a concrete injury if "he [was] denied access to information required to be disclosed by statute, *and* he 'suffer[ed], by being denied access to that information, the type of harm

*Congress sought to prevent* by requiring disclosure.'" *Id.* (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). The court concluded, however, that the harm which Dreher allegedly suffered was not the type which Congress sought to prevent in enacting the FCRA. *Id.* at 346.

Similarly in this case, Plaintiff claims that he "has been damaged" by Defendant's actions. (Compl. ¶¶ 14, 17.) But his Complaint fails to indicate that he suffered "the type of harm Congress sought to prevent by" enacting the FDCPA. *Dreher*, 856 F.3d at 345. In fact, the Complaint fails to identify what Plaintiff's harm is at all. Therefore, the Court must conclude that Plaintiff's injury is not an intangible harm sufficient to confer standing under either *Spokeo* or *Dreher*.

## IV. CONLUSION

In conclusion, Plaintiff's mere allegation of a failure to disclose the disputed status of his debt is insufficient to confer constitutional standing because he failed to plead a risk of harm and did not "identify either a common law analogue or a harm Congress sought to prevent." *Dreher*, 856 F.3d at 346. Plaintiff is thus "left with a statutory violation divorced from any real world effect." *Id.* This does not mean that Plaintiff could never have standing to bring an action to recover for the FDCPA violations that he alleges. But he must plead a concrete harm in order to satisfy the injury-in-fact requirement of Article III.

Therefore, the Court will dismiss Plaintiff's Complaint (ECF. No. 1) without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 22, 2017
Richmond, Virginia